IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RODRICKUS CARLOS JEFFERSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 3:12-cv-00751 |
| ) | |
| WARDEN TONY HOWERTON, Morgan County ) | Judge Campbell |
| Correctional Complex, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

Petitioner Rodrickus Carlos Jefferson was convicted of first-degree murder by the Criminal Court for Davidson County in Nashville, Tennessee after a jury trial in 2008. Now before the Court is his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) The petitioner is presently incarcerated at the Morgan County Correctional Complex in Wartburg, Tennessee. For the reasons set forth herein, the Court finds that the petitioner is not entitled to the relief sought.

### I. PROCEDURAL HISTORY

A Davidson County jury found petitioner Jefferson guilty of the offense of first-degree premeditated murder on November 20, 2008, and Jefferson was sentenced to life imprisonment with the possibility of parole. Jefferson was denied relief on direct appeal. *State v. Jefferson*, No. M2009–01279–CCA–R3–CD, 2011 WL 1874031 (Tenn. Ct. Crim. App. May 10, 2011). The Tennessee Supreme Court denied Jefferson's request for permission to appeal in August 2011. Jefferson filed a petition for post-conviction relief in the state courts, which was dismissed on the grounds that the issues raised had been previously determined.

Jefferson's timely petition for a writ of habeas corpus (ECF No. 1) was filed in this Court on July 19, 2012. Shortly after the petition was filed, the Court conducted a preliminary examination thereof and determined that it stated colorable claims for relief. Accordingly, the Court entered an order (ECF No. 3) directing the respondent to answer, plead or otherwise respond to the petition. Rule 4, Rules Gov'g § 2254 Cases. The respondent filed its answer to the petition on September 25, 2012 (ECF No. 12).

Upon consideration of the petition, the answer, and the record, the Court finds that an evidentiary hearing is not needed in this matter. *See Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (an

evidentiary hearing is not required when the record conclusively shows that the petitioner is not entitled to relief). The Court will dispose of the petition as the law and justice require. Rule 8(a), Rules Gov'g § 2254 Cases.

## II. STANDARD OF REVIEW

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In addition, however, with respect to claims that have been "adjudicated on the merits in State court proceedings,"

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted . . . unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* In other words, a federal court is bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable view of the facts. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Additionally, this Court must presume the correctness of state court factual determinations, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous."), *abrogated on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995). As the Supreme Court has recognized, "[t]his is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (quoting *Harrington v. Richter*, 562 U.S. ---, ---- 131 S. Ct. 770, 786 (2011); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen*, 131 S. Ct. at 1399. The Supreme Court has explained that a state-court decision will be "contrary to" clear established federal precedent only if the state court "applies a rule that contradicts the governing law set forth in our cases" or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). Under the "unreasonable application" clause of § 2254(d)(1), habeas relief is available if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case," or if a "state court decision either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008) (citations and internal quotation marks omitted).

The Supreme Court has explained that a state-court factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 130 S. Ct. 841, 849 (2010). Thus, the mere fact that "[r]easonable minds reviewing the record might disagree" about the factual finding in question "does not suffice [on habeas review] to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341–42 (2006). Thus, a state court's factual determinations "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003).

### III. ANALYSIS AND DISCUSSION

Jefferson raises two claims in his petition: (1) that the trial court erred in failing to instruct the jury on self-defense; and (2) that the trial court erred in allowing the petitioner to represent himself at trial. The respondent concedes that Jefferson has properly exhausted his claims.

#### A. The Trial Court's Refusal to Give a Self-Defense Jury Instruction

In his first claim for relief, the petitioner argues that his conviction violated his right to due process under the Fourteenth Amendment insofar as he was not afforded a complete and correct charge of the law applicable to the facts of his case. Specifically, he contests the trial judge's refusal to give a self-defense instruction to the jury. In support of this claim, the petitioner argues that the trial judge's refusal to include

a self-defense instruction was erroneous because: (1) the issue of self-defense was raised by the petitioner's own testimony (on cross-examination) and by other evidence during trial, which, he claims, indicated that the victim had been intoxicated and had pulled a gun on the petitioner; (2) the trial judge did not have the authority to resolve a fact issue raised by the evidence at trial; (3) the refusal to include the self-defense instruction was not harmless error.

The Tennessee Court of Criminal Appeals denied relief on this claim, as follows:

> Finally, Defendant contends that the trial court in this case erred by failing to provide the jury with an instruction on self-defense based on evidence of an argument before the shooting, and Ms. Sparks' testimony that Defendant told her that the victim "upped" on him with a gun. We disagree.
>
> The defense of self-defense in Tennessee is defined as follows:
>
> (a) A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds. There is no duty to retreat before a person threatens or uses force.
>
> "It is the duty of a trial judge to give a complete charge of the law applicable to the facts of a case." *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986) (citing *State v. Thompson*, 519 S.W.2d 789, 792 (Tenn. 1975)). In other words, "a defendant has a constitutional right to a correct and complete charge of the law." *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990). "While the jury is the judge of the facts and the law, it is the duty of the jury to apply the law contained in the charge of the trial court to the ultimate facts determined by the jury." *State v. Williamson*, 919 S.W.2d 69, 80 (Tenn. Crim. App. 1995). The question of whether or not an individual acted in self-defense is a factual determination to be made by the jury. *State v. Ivy*, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). "The issue of the existence of a defense is not submitted to the jury unless it is fairly raised by the proof." T.C.A. § 39–11–203(c). According to the Sentencing Commission Comments: "The defendant has the burden of introducing admissible evidence that a defense is applicable. If the defense is at issue, the state must prove beyond a reasonable doubt that the defense does not apply."
>
> After the close of proof in this case, there was a discussion concerning the jury instructions, and Defendant requested an instruction on self-defense. In support of his request, elbow counsel for Defendant pointed out that Lawanda Sparks testified that the victim "came up on him and he shot him with his own gun." The trial court noted that there had not been any testimony that placed Defendant in fear of serious bodily injury. Defendant then told the court that he did not intend to argue self-defense in his closing argument, and elbow counsel pointed out that Defendant was adamant about not arguing self-defense. Concerning this issue, in denying Defendant's motion for new trial, the trial court stated:

> In the discovery there was evidence from at least one witness that would have supported an argument and a jury instruction on self-defense. [Defendant] absolutely did not want to go that direction, instead taking the position that he was not anywhere around at the time of the shooting and someone else did it.
>
> Because of the approach he took, even though there was some slight evidence I guess that could have been interpreted in a manner that might have supported the instructions for self-defense, Mr. Jefferson made it clear that's not the route he was traveling and, therefore, it really wasn't an issue for the jury to consider.

We do not believe that a review of the proof in this case supports a jury instruction on self-defense. Although there was some testimony that Defendant and the victim had an argument before the shooting, there was no testimony that the victim was threatening Defendant at the time of the shooting. The proof shows that the unarmed victim was sitting on the couch with his feet propped on a table playing video games. Pamela Key testified that she and Eric Fleming were arguing at the time of the shooting, but Defendant and the victim had no part of the argument. She said that Defendant pulled a gun out of his coat and shot the victim in the face without provocation. Chaston Nix testified that there was "no screaming or nothing" prior to the shooting. He testified that "[e]verything seems to be going pretty smooth I guess and the next thing I know I heard some glass breaking and stuff and it sounded like somebody could be wrestling or scuffling or something and then I heard a gunshot go off." Likewise, Fred Ewing testified that Defendant's demeanor before the shooting was "cool" and that he did not see anything going on before the shooting.

Although Lawanda Sparks testified that Defendant told her that the victim "upped on me with his gun," a complete reading of her testimony, as noted by the trial court, indicates that a period of time passed before the victim was shot. During her direct testimony, the following exchange took place:

[Prosecutor]: What did he say happened after that?

[Ms. Sparks]: I think he, I remember as far as I remember he was saying something like, you know, the argument was over or something, they might have sat back down or something and that is when he told me that he shot him with his own gun, and he had the gun.

[Prosecutor]: And when you say he shot him with his own gun, you are saying that Mr. Jefferson said he shot the victim with his own gun?

[Ms. Sparks]: Uh-huh. (Affirmative.)

[Prosecutor]: Okay. And just to go back a little bit you said that it was over, did he, what was he saying that made you think that the argument was over, if you remember?

[Ms. Sparks]: He said something about sitting back down or something, smoking, I don't know. I don't remember.

[Prosecutor]: Okay. Did he tell you at any point where the argument was?

[Ms. Sparks]: No. He didn't say a place, but to me it sounded like it was in the house or something but I am not sure.

Ms. Sparks' testimony was further clarified on redirect examination:

[Prosecutor]: Okay. And Mr. Jefferson specifically told you I shot the victim with his own gun?

[Ms. Sparks]: Not in those words.

[Prosecutor]: Okay . . . What did he say exactly?

[Ms. Sparks]: He said, the [n____r] upped on me with his gun and whatever he said in between that and he said I shot him and I took his gun.

[Prosecutor]: And the stuff that you said that he said between that what was he saying?

[Ms. Sparks]: He was explaining the situation, I really honestly don't know, I can't, I am not going to make it up but he was basically saying something about the altercation if there was one what happened with, you know, between the time that he had the first, the altercation and between the time that he was actually shot.

[Prosecutor]: Okay.

[Ms. Sparks]: Either they was smoking or talking or something and he was doing something.

[Prosecutor]: As if they had calmed down?

[Ms. Sparks]: Yes.

    Even if the trial court's failure to instruct the jury on self-defense was error, it was clearly harmless. As noted by the trial court, the evidence supporting an instruction was "very tenuous at best." Defendant did not suggest during his opening or closing statements that he acted in self-defense, nor during his examination of witnesses did he make the suggestion. In his own testimony, Defendant said that he was not in the room when the victim was shot, and he did not know who shot the victim. He then suggested that Eric Fleming may have shot the victim while trying to rob him. Defendant is not entitled to relief on this issue.

*State v. Jefferson*, No. M2009–01279–CCA–R3–CD, 2011 WL 1874031, at *14–16* (Tenn. Ct. Crim. App. May 10, 2011).

The issue raised by Jefferson's petition is whether the Tennessee Court of Criminal Appeals' conclusion that no error occurred, or that, if an error occurred, it was harmless, was contrary to or involved an unreasonable application of federal law. 28 U.S.C. § 2254(d); *Barker v. Yukins*, 199 F.3d 867, 872 (6th Cir. 1999). The Sixth Circuit has framed the applicable federal law in the context of a "harmless error" decision as follows:

[W]hen the issue before the federal habeas court is the state court's finding of harmless error . . . [the] test is whether the error "had substantial and injurious effect or influence in

> determining the jury's verdict," [and] it is the habeas petitioner's burden to demonstrate that the trial error resulted in "actual prejudice." If the petitioner is able to make that showing, he will surely have demonstrated that the state court's finding that the error was harmless beyond a reasonable doubt . . . was outside the realm of plausible credible outcomes, and therefore resulted from an unreasonable application of *Chapman* [*v. California*, 386 U.S. 18 (1967)].

*Nevers. v. Killinger*, 169 F.3d 352, 371–72 (6th Cir.), *cert. denied*, 527 U.S. 1004 (1999), *quoted in Barker*, 199 F.3d at 872. Thus, to prevail on this claim, Jefferson must show that the state trial court's failure to instruct the jury on self-defense had a substantial or injurious effect or influence in determining the jury's verdict and resulted in actual prejudice.

Based on the facts presented here, the Court finds that the Tennessee Court of Criminal Appeals did not improperly invade the province of the jury when it determined that the evidence supporting self-defense was "tenuous at best," in light of the absence of any evidence that the petitioner ever had a "reasonable belief that there [was] an imminent danger of death or serious bodily injury." *Jefferson*, 2011 WL 1874031, at *14. The decision was further supported by the petitioner's insistence that he would not rely upon self-defense as a defense to the murder charge. Jefferson, instead, insisted throughout the trial and in his closing argument that he was not in the room at the time of the shooting and did not know who the murderer was. Consequently, based on the evidence presented at trial, even if a self-defense instruction had been provided to the jury, no reasonable juror could have found that Jefferson acted in self-defense. Jefferson has therefore not demonstrated that the failure to instruct the jury on self-defense had a substantial or injurious effect or influence in determining the jury's verdict, or that he was prejudiced by the trial court's failure to include a self-defense jury instruction.

Thus, although the state court did not cite or refer to the federal constitutional standard, its decision was neither contrary to nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court. It was also based on a reasonable determination of the facts in light of the evidence presented in the state court proceedings. The petitioner is not entitled to relief on the basis of this claim.

### B. The Petitioner's Waiver of His Right to Counsel

In his second claim for relief, the petitioner insists that he was convicted in violation of his Sixth

Amendment right to the assistance of counsel, because he did not knowingly waive his right to counsel.[1] The petitioner's only basis for contending that his waiver of the right to counsel was not knowing and voluntary is that he allegedly believed that his former counsel, who remained at the trial as "elbow counsel," would "help [the petitioner] determine factors involving the rules of evidence and procedure," and that the petitioner only needed assistance in determining "what is admissible and what is not admissible." (ECF No. 1, at 5.) The petitioner asserts that the trial judge never explained that there were any limitations or restrictions on the attorney's ability to assist the petitioner in making that type of determination, and claims that "[t]he record does not reflect that [he] knowingly waived [his] right to counsel because [he] was never aware that [he] would be without an attorney." (*Id.* at 5; *see also* ECF No. 2, at 12–13 ("Here, the record reflects that the trial Judge whol[ly] failed to advise me of the limitations and restrictions of my assisting counsel d[e]spite knowing that I knew nothing about the law. The record further reflects that the restrictions and limitations that were placed on Mark Kovach [as elbow counsel] was placed on him after the trial Judge had granted self-representation and with no regard as to whether or not I sought to proceed in such a manner.").)

The trial record reflects the following exchanges between the judge and the petitioner prior to the judge's decision to grant the petitioner permission to represent himself at his criminal trial:

> A.  Can I get Mr. Kovach to –
>
> Q.  No. You are going to represent yourself or you are going to be represented by an attorney. The law doesn't allow you to use an attorney part-time and represent yourself the other time.
>
> A.  So I have to question myself?
>
> Q.  Yes.
>
> A.  I understand.

(Trial Tr. Vol. 2, at 231:1–8 (ECF No. 13-3, at 18).)

---

[1] The petitioner also argues that the absence of a written waiver renders his decision to represent himself legally insufficient, and the written document the trial court relied upon did not satisfy the state law requirement under Tenn. R. Crim. P. 44(b). Because a federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), relief is not warranted on the basis of this argument, which depends wholly upon an alleged violation of state law.

Q. Do you understand that in representing yourself if you fail to make the appropriate objections do you understand that if you end up being convicted of a crime that you may have lost that issue for appeal purposes?

A. Yes, sir.

Q. Do you understand that?

A. Yes, sir.

(Trial Tr. Vol. 2, at 233:3–9 (ECF No. 13-3, at 20).)

Q. Do you understand that your lack of training could place you at a significant disadvantage with the State's attorneys who are highly trained in criminal law?

A. I understand that.

Q. That they may be able to, I mean, they are going to have to comply with the rules of evidence and procedure as well but because of their extensive insight relative to your knowledge of the case that they may be able to accomplish things that they wouldn't otherwise be able to accomplish had you had benefit of counsel; do you understand that?

A. Yes, sir. I do.

Q. I think I mentioned this to you last week and I mentioned it to you again yesterday afternoon that I think that you are absolutely foolish in attempting to represent yourself. Have I advised you that on at least this now being your third occasion?

A. Yes, sir.

Q. And in spite of all of the shortcomings and disadvantages that you have in representing yourself and knowing full well of the possible consequences of that self representation are you determined to proceed with this trial by representing yourself?

A. Yes, sir.

Q. Are you making this decision freely and voluntarily of your own free will?

A. Yes, sir.

Q. All right.

(Trial Tr. Vo. 2, at 234:14–235:16 (ECF No. 13-3, at 21–22).)

THE COURT: And what . . . do you understand that unless that evidence complies with the Tennessee Rules of Evidence that I am not going to allow you to get it in even if that is your strategy. Do you understand that you – that just because you are not a lawyer that I am not going to give you any leeway or special favors.

You are going to comply with all of the Rules of Evidence and all of the Rules of Procedure and all of the decorum that is required of an attorney in representing a case in criminal court the same as if you are a lawyer, you don't get any breaks because you are not a lawyer.

>               MR. JEFFERSON: I understand.

(Trial Tr. Vo. 2, at 239:19–240:10 (ECF No. 13-3, at 26–27.)

Before pronouncing his ruling granting the petitioner's motion to represent himself at his own criminal trial, the trial judge stated as follows:

> All right. Just a few things that before I, well, first of all, I find that Mr. Jefferson is exercising his right to represent himself and that he has chosen to do so knowingly and intelligently and when I say intelligently it is not because I think it is a smart decision for him to make but that he is fully aware of all of the possible ramifications that may arise from it and he is aware of the significant serious nature of the charge against him and that he has been fully counseled on the various trial strategies in this case.
>
> He certainly understands the pitfalls that may arise during the course of these proceedings and the disadvantage that he faces in representing himself, nonetheless he chose to proceed in that manner anyway so the Court will grant him that right.
>
> I am going to appoint Mr. Kovach as stand-by counsel and I need to make a few things clear Mr. Kovach since you are simply stand-by counsel *you cannot actively participate in any manner whatsoever. You cannot be nudging him and standing up and objecting for him or doing any of the things that you probably routinely and normally do during the course of this trial.*
>
> You can sit there and you can respond to any questions that Mr. Jefferson may have of you, but you cannot take a proactive part in the trial of this case. You are basically on call for when Mr. Jefferson feels that he may want some guidance from you.

(Trial Tr. Vol. 2, at 244:16–245:17 (ECF No. 13-3, at 31–32) (emphasis added).)

The Court also explained the restrictions imposed upon Mr. Kovach to the Jury, in the petitioner's presence:

> Mr. Kovach has been appointed by the Court as stand-by counsel. He will sit at the counsel table with Mr. Jefferson. He will not be participating in the trial of this case. If Mr. Jefferson chooses or feels that he needs to get some legal guidance or assistance then he will have Mr. Kovach there to ask questions and get some guidance but Mr. Jefferson is the person who is in effect his own lawyer.
>
> Mr. Kovach will not be participating in the case. He will not ask questions. . . . He won't be making objections or any of those things that is strictly and solely the responsibility of Mr. Jefferson.

(Trial Tr. Vo. 2, at 248:13–24 (ECF No. 13-3, at 35).)

In rejecting the petitioner's claim that he had been deprived of his Sixth Amendment right to counsel, the Tennessee Court of Criminal Appeals stated as follows:

> The right to assistance of counsel in the preparation and presentation of a defense to a criminal charge is grounded in both the Tennessee and United States Constitutions. *See* U.S. Const. amend. VI; Tenn. Const. art. I, § 9. There also exists an alternative right—the right to self-representation—which is necessarily implied by the structure of the

Sixth Amendment. *Faretta v. California*, 422 U.S. 806 (1975); *State v. Northington*, 667 S.W.2d 57, 60 (Tenn. 1984). "The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Northington*, 667 S.W.2d at 60 (quoting *Faretta*, 422 U.S. at 821–22).

The exercise of the right to self-representation depends, in large part, upon a knowing and intelligent waiver of the right to counsel. *Id.*; *State v. Burkhart*, 541 S.W.2d 365 (Tenn. 1976)); *State v. Herrod*, 754 S.W.2d 627, 629–630 (Tenn. Crim. App. 1988). Consequently, in cases where the accused states a desire to represent himself or herself at trial, the trial court has a duty to first determine whether the waiver is knowing and intelligent. In *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938), the United States Supreme Court placed "the serious and weighty responsibility . . . of determining whether there is an intelligent and competent waiver" directly upon the trial judge. More specific guidelines were subsequently established in *Von Moltke v. Gillies*, 332 U.S. 708, 723–724 (1948), wherein the Supreme Court stated that

> [A] judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

In *Smith v. State*, 987 S.W.2d 871 (Tenn. Crim. App. 1998), this Court recommended that in cases where a defendant aspires to proceed *pro se*, the trial court should conduct its inquiry in accordance with the guidelines contained in *1 Bench Book for United States District Judges* 1.02–2 to –5 (3d ed. 1986) (for ease of reference, the guidelines were reprinted in the appendix to *Smith*).

. . . .

The record in this case demonstrates that the trial court substantially complied with guidelines set forth in the *Bench Book for United States District Judges*. Before trial, Defendant addressed the court and asked to represent himself "so I can present the evidence that I need to present because Mr. Kovach is not willing to present this evidence." He then asked if trial counsel could remain as "elbow" counsel to help him. A discussion was then had about the disagreements in strategy between Defendant and trial counsel, and trial counsel indicated that he was willing to comply with Defendant's requests concerning strategy. However, trial counsel told the court that "he feels that he can present it better than I can, your Honor. but [sic] this is what he wants to do. I will be more than happy to stay on an help him." Defendant informed the court that he needed assistance "to determine what is admissable [sic] and what is not admissable [sic]."

The trial court then asked Defendant his age, educational training, if he had any formal legal training, and if he had ever been involved in any type of legal proceedings. Defendant responded that he got his GED and had some college training. He said that he had helped in other people's cases by "[w]riting motions and looking up certain, looking up information in law books and stuff like that." Defendant told the court that he understood

-11-

the charges against him and that his theory of defense was that he was outside the house when the shooting occurred. He also knew the lesser-included offenses to first-degree murder, although he confused them with possible defenses. Defendant told the trial court that he was aware of the State's evidence, and he understood the possible sentences that he faced. The trial court questioned Defendant about his knowledge of the Rules of Evidence and the rules of Criminal Procedure, and Defendant indicated that he had read them while incarcerated. The trial court asked Defendant if he understood that if he testified on his own behalf, he could not "just get on the stand and give a narrative of what happened." The court also informed Defendant that he would have to ask himself questions and respond to those questions and not just tell his side of the story.

Defendant told the court that he understood the range of punishment for the lesser-included offenses of first-degree murder, and the court advised Defendant that he would be a Range II offender for second-degree murder. Defendant said that he had previously been convicted of burglary, aggravated assault, and a drug charge, and he understood that the State might be allowed to present evidence of those prior convictions if he testified. Defendant told the trial court that he understood that if he failed to make appropriate objections, he might lose the issue for appeal purposes. He indicated that he did not "really" understand appeals and trying to preserve the record for appeal, but it was something that he could study and work on in post-conviction. Defendant also said: "If I am convicted I can just accept my punishment." The trial court informed Defendant that he could not file a post-conviction petition against himself, and Defendant said that he understood.

*State v. Jefferson*, 2011 WL 1874031, at *9–*11. After relating much of the conversation between the trial judge and the petitioner, as is set forth above, the court ultimately concluded that "the trial court's questioning was in accordance with the guidelines contained in the *Bench Book* [and] that the appellant knowingly and intelligently waived the right to the assistance of counsel." *Id.* at *12.

The state appellate court correctly identified the governing legal principles established by the United States Supreme Court and reasonably applied it to the facts of this case. The ruling was neither contrary to nor an unreasonable application of clearly established federal law, and it is based on a reasonable determination of the facts in light of the evidence presented in the state court proceedings. The record reflects that the trial court engaged in an extensive discussion with the petitioner, who insisted on representing himself despite repeated admonitions from the trial judge that it was foolish to do so. The record does not support the petitioner's claim that he was not adequately informed that elbow counsel would be severely restricted in assisting him with respect to evidentiary (and other) matters. To the contrary, he was clearly warned multiple times prior to the start of trial that his "elbow counsel" would not be permitted to take any active role in the trial. The petitioner is not entitled to relief on the basis of this claim.

## IV. CONCLUSION

For the reasons set forth herein, the instant petition for relief under § 2254 will be denied and this matter dismissed.

The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Gov'g § 2254 Cases. The petitioner may not take an appeal unless a district or circuit judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the COA must "indicate which specific issue or issues satisfy the [required] showing . . . ." 28 U.S.C. § 2253(c)(3). A "substantial showing" is made when the petitioner demonstrates that "'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "[A] COA does not require a showing that the appeal will succeed." *Miller-El*, 537 U.S. at 337. Courts should not issue a COA as a matter of course. *Id.*

The petition presented here fails to state any viable basis for federal habeas relief. Because an appeal by the petitioner on any of the issues raised in this petition would not deserve attention, the Court will deny a COA.

An appropriate order will enter.

_____
Todd Campbell
United States District Judge